THE STATE vs. HENRY G. DEMOTT and OTHERS.

Surveyors of the highways have no power to vacate part of a highway granted and confirmed by charter from the legislature.

Construction of the supplement to the charter of the Newark and Pompton Turnpike Company, by which they are authorized to abandon a part of their road.

This was a certiorari directed to the clerk of the Common Pleas of the county of Morris, removing into this court, the proceedings of certain surveyors of the highways. It was submitted upon a statement of the facts, and the written argument of counsel, whether, under the circumstances of the case, the proceedings of the surveyors could be sustained. The statement of facts is as follows : " The Newark and Pompton Turnpike Company, under their act of incorporation, passed February 24, 1806, erected a turnpike road from Newark to Colfax's Corner.

By a supplement to their charter, passed January 28, 1830, the said company are authorized to abandon so much of said turnpike as lies between Mead's basin and Colfax's Corner, being six miles of the upper end of the road.

This supplement proceeds to enact further, " That such part of said road be discharged from the operation and effect of the said act, shall be deemed to be, and be worked and managed as a public highway ; provided, that it shall not be lawful for the said, The President and Directors of the Newark and Pompton Turnpike Company, to exercise any control or authority over that part of said road so abandoned, or to receive any toll on the same."

The surveyors of the highway, under the common road law, have since taken up a part of this six miles of road, amounting to fifty-five chains in distance, and laid out a new road, diverging from the straight line and again connecting the said road, but increasing the distance by about twelve chains."

*Frelinghuysen,* for prosecutors of the certiorari.

*P. Dickerson,* contra.

The opinion of the court was delivered by Justice Ford.

FORD, J.  The Newark and Pompton Turnpike Company,

constructed a turnpike road from Newark to Colfax's Corner, under a charter of the 24th of February, 1806, and when it had existed more than twenty years, they obtained a supplement to their charter, the 28th of January, 1830, authorizing them to *abandon* so much of the upper end of the said road as lay between Mead's Basin and Colfax's Corner, a distance of six miles, and enacting, that it shall be discharged from the *operation* and *effect* of the charter; and that the company shall not receive any *toll* thereon, nor exercise any *authority* or *control* over that part of the road; but that *the same shall be deemed to be, and shall be worked and managed, as a public highway.*

The surveyors of the highway have recently vacated fifty-five chains in length, of this road, so declared to be a public highway, and have laid a new road, diverging from it some distance, and then coming into it again, thereby increasing the distance about twelve chains; and this return being brought here by certiorari, a motion is made to vacate and set it aside, on the ground that they had no power over a road of this kind, that is constituted a public highway in a charter granted by the legislature to the company.

It is said, in support of the authority of the surveyors, that according to the foregoing supplement, the company was to have no *interest* in the part of the road they abandoned, whereas it is not so expressed in the supplement, nor can it be drawn as a necessary or fair inference, from anything else that is expressed. They abandon it as a part of the turnpike road, yet they may derive great benefit to their remaining road, from the continuance of the severed part, as a public highway; but these are totally different interests, and an express surrender of one, cannot be an implied surrender of the other, by any rule that I am acquainted with; the argument lies more forcibly the other way, that if both interests were intended to be surrendered, they would both have been expressed. The same observation applies to the surrender of *toll*, that if another and a different interest had also been intended, both had been expressed, and according to the rules of law, the expression of only one, is the exclusion of the other. So another clause deprives the company of authority or control over it as a common highway; but thousands are interested, deeply interested, in

highways, without authority or control over them. Another clause discharges this part of the road from the operation and effect of the first act, without any reference to the interest they may have in it under the second act, or supplement, by which it is made a free and common highway, in which all may have benefit, because none are excluded. The proposition is therefore much broader than any clause in the supplement will warrant, that the company was to have no benefit or interest in it as a common highway; on the contrary, the supplement secures to the company, another interest in it, different indeed, from the one surrendered, but still a very important one; for while it abolished the old rights, by one class of causes, it secured this new one by a separate clause to the following effect, that the section of turnpike road from the basin to the corner, "*shall be deemed to be, and shall be worked and managed as a public highway.*" The prior clauses had discharged this section from the operation and effect of the former law, destroyed the right of toll, and extinguished the company's authority and control over it, in a manner that abolished every vestige of right; and the supplement having entirely accomplished that end, would certainly have stopped there, unless it had a further object in view, yet it proceeds to a totally distinct subject, by declaring the future destiny of the part so abandoned. The title to this land would still remain in somebody, either the company, if they had a deed for it by purchase, or else in the original owners, either of whom might have shut it up; but the legislature did not mean it should cease as a line of travel, to which the public had been accustomed for twenty years, and the company must have deemed it a communication indispensably necessary to the remaining part of the turnpike between the basin and Newark. It was for both these important objects that the legislature enacted it into a public highway, and declared that it should be *worked* and, *managed* as such, and confirmed the whole by inserting it in this supplementary charter. As far as the legislature had power to make such a grant, it became a right vested by charter, not resumable by the power of the legislature itself, without the consent of the company, because, according to the opinions of the ablest American jurists, it is in the nature of a contract, and any law impairing

Peltier *v.* Banking Company.

the obligation of contracts, is void by the constitution of the United States. I do not mean to deliver any opinion on this constitutional question, because it does not arise in the present cause ; the legislature have done no act as yet to impair this supplementary charter, but even if it could be done by the supreme power of the state, I am certain it cannot be done by the surveyors of the highways. If they have power to vacate part of a highway granted and confirmed by charter of the legislature, they have power to vacate the whole, *t* id by the same rule, could vacate every other chartered road in the state. I am of opinion therefore, that the return of the surveyors vacating this road and laying it elsewhere, is void and must be set aside.

The Chief Justice gave no opinion, as he was counsel for one of the parties before his appointment.

Return set aside.

CITED in *Re Highway*, 2 *Zab.* 302.